Kevin S. Wiley, Sr.
State Bar No. 21470700
THE WILEY LAW GROUP, PLLC
325 N. St. Paul Street, Suite 2750
Dallas, Texas  75201
Email: kwiley@mahomesbolden.com
Phone: (469) 484-5016
Fax: (469) 484-5004

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MICHAEL BRADDICK , DBA BIOFLEX MEDICAL,** <br> **PLAINTIFF** <br><br> VS. <br><br> **HON. ALLEN ACOSTA,** <br> **SECRETARY OF THE UNITED STATES DEPARTMENT OF LABOR,** <br><br> **DEFENDANT** | Civil Action No._____ |

**COMPLAINT FOR DECLARATORY JUDGMENT AND APPLICATON FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**

Now Comes Michael Braddick ("Braddick" or "Plaintiff"), and files this Complaint for Declaratory Judgment and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, (the "Complaint") and in support thereof respectfully states as follows:

**I.   PARTIES**

1.   Plaintiff is an individual doing business as Bioflex Medical, with his principal place of business in Dallas, Texas.

2. Defendant is the Secretary of the United States Department of Labor, headquartered in Washington, D.C.  He may be served by serving the Office of Legal Counsel, United States Department of Labor, 200 Constitution Ave., N.W., Room N-4325, Washington, D.C. 20210, attn: Jacqueline D. Goldstein-Spitz, who is the counsel of record in a related case involving this dispute. Alternatively, Defendant may be served by serving the Office of the United States Attorney, 1100 Commerce Street, Ste. 300, Dallas, Texas  75242, attn.: AUSA Donna K. Webb, who is counsel of record in a related case involving this dispute.

## II.   JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1361.  This case presents a federal question of a dispute with an agency of the United States, to compel an officer thereof to comply with its own rules and regulations in comportment with Constitutional limits of due process.  Venue is proper before this Court pursuant to 28 U.S.C. § 1408 and 1409.

4. This is an action for declaratory judgment pursuant to 28 U.S.C.A. § 2201, seeking to declare that the Defendant Secretary has acted in violation of the provisions and regulations of the Department of Labor, ("DOL"), Department of Workmen's Compensation, ("OWCP") Division of Federal Employee's Compensation, ("DFEC") insofar as Defendant has  improperly either (i) refused to timely reconsider a  determination with respect to allowance or disallowance of payments after completion of audit investigation; or (ii) alternatively, after completion of audit investigation and review of reconsideration,  has determined to continue disallow payment without explanation to Plaintiff of the cause therefor, or explanation of any means Plaintiff may use to cure alleged defects leading to continued disallowance. As a result, Defendant has wrongfully withheld payment on over

$619,580.61 of claims for durable medical equipment and services provided to claimants under OWCP/DFEC programs, including over $131,000 in claims that were pre-approved by OWCP/DFE, all without due process of law. Due to the threatened immediate and irreparable injury resulting from this wrongful withholding in violation of fundamental tenets of due process, without explanation of failure to grant or deny reconsideration or means to cure, after repeated requests, a temporary restraining order, temporary and permanent injunction, restraining Defendants from so withholding the funds owed to Plaintiff for providing durable medical equipment and services on behalf of claimants under the OWCP/DFEC programs is sought under Fed. R. Civ. Proc. 65.

## III.
## INTRODUCTION AND BACKGROUND FACTS

5.  Plaintiff initiated this complaint by filing a complaint herein on December 28, 2018. Annexed to this Complaint is the Unsworn Declaration of Plaintiff under penalty of perjury under 28 U.S.C. §1746 in support of the Complaint. (the "Declaration"). Annexed to the Declaration are the exhibits referred to herein and therein.

6.   Prior to and continuing until the date of filing of this Complaint, Plaintiff has been providing and continues to provide durable medical equipment and services ("DME") in fulfillment of prescriptions by licensed medical professionals for patients who are government employees under OWCP/DFEC programs with the United States requiring treatment.

7.  As confirmed by the annexed Declaration, on or about April 13, 2018, Plaintiff was served with a "Search and Seizure Warrant" under Seal annexed thereto as Exhibit "A". Such warrant was issued based on the undisclosed and sealed affidavit of Special Agent Dimitrios Koumas, DOL-OIG, and signed by United States Magistrate Judge David L. Horan.

8. The alleged basis for the search under Fed. R. Crim. P. 41(c) was to seek evidence of an alleged crime; contraband fruits of crime, or other items illegally possessed; or property designed for use, intended for alleged use in committing a crime.

9. Subsequent thereto, on or about May 15, 2018, the DOL sent the Plaintiff a letter advising of a hold on payments on accounts created by the Plaintiff for services provided under the DOL OWCP/DFEC programs. The hold was premised on "providers identified by OWCP/ DFEC as "potentially engaging in billing practices that are fraudulent". Said letter is annexed thereto as Exhibit "B" to the Declaration.

10. Plaintiff was advised in the same letter that bills submitted by Plaintiff were being subject to an "administrative review", to review "analomies identified by OWCP and the investigation of DOL-OIG of these potentially inappropriate billing practices…."

11. Over two months after the May 15, 2018 letter, on July 25, 2018, Plaintiff's counsel wrote a certified letter, return receipt requested, demanding that any administrative investigation into the Plaintiff's billing practices which caused a hold on Plaintiff's payment be suspended in favor of the automatic stay issued on the petition date of Plaintiff's then filed and now dismissed petition under Title 11, Chapter 11.  A true and correct copy of the letter with the return receipt attached showing delivery was completed on August 2, 2018 is attached thereto as Exhibit "C" to the Declaration.

12. The bankruptcy case was subsequently  dismissed by agreement  with the Office of the United States Trustee when it became clear that: (i) the partnership which was the filed Debtor had earlier forfeited its charter;  (ii) Michael Braddick, Plaintiff herein was the real party in interest and he was a non-debtor; and  (iii) there was no real necessity for a

chapter proceeding under Title 11 to deal only with this dispute and a related claim for payment of the Department of Treasury, Internal Revenue Service ("IRS").

13.     On the July 15, 2018 date of the above letter from counsel to the Defendant, (Exhibit "C"); the Defendant was suspending over $332,000 in billings to the Plaintiff. Based on the Plaintiff's accounting through early August 2018, attached hereto as Exhibit "D" to the Declaration, this amount was now well over $417,000 because the Plaintiff had not been suspended as an authorized provider by the Defendant at any time. As of the date of this Complaint, Debtor estimates in his Declaration that the total claims now exceed $619,000.

14.     In addition, on or about June 7, 2018, Defendant seized approximately $27,000 from the Plaintiff. This amount was subsequently returned to the Trustee for the Debtor in the below bankruptcy proceeding, ostensibly not as a return of seized funds, but as "approved reimbursements". Said seizure is attached to the Declaration as Exhibit "B-1".

15.     Notwithstanding the above Exhibit "C" demand to the DOL with respect to the automatic stay provisions of the Bankruptcy Code, and requirements of 11 U.S.C. §543 that the Defendant, as alleged custodian of property of the estate, forthwith turnover assets of the estate upon knowledge of the filing, the Defendant continued to hold funds owing to the Plaintiff while it pursued what it characterized in its own letter and pleadings filed with the Bankruptcy Court as its audit of Plaintiff's billing practices.

16.     In support of this allegation, Plaintiff attaches to the Declaration Defendant's answer as Exhibit "E" that was filed in the Bankruptcy Case on September 7, 2018. The answer argues that the automatic stay was inapplicable, because the delay in payment was due to Debtor/Plaintiff's unspecified failure to comply with OWCP/DFEC rules and regulations for reimbursement. Thus, the Defendant was not a mere custodian because it has alleged

exclusive jurisdiction to determine reimbursement. It is noteworthy that no suggestion of criminal conduct was made in the answer, or whether criminal conduct had anything to do with the facts of the case. Plaintiff here concedes exclusive jurisdiction to determine reimbursement rest with DOL. But as argued herein, this exercise of exclusive jurisdiction to determine reimbursement is subject to Constitutional protections for due process as outlined herein.

17. Plaintiff, thru the Court appointed Trustee in charge of this dispute at that time, then inquired informally into exactly what rules and regulations were being violated. In response, Defendant initially responded to the Trustee that a certain billing code, 99070, had not been properly input for approximately $5,000 of the disputed $417,000 as shown on Exhibit "F". Plaintiff, upon receipt of this answer, remained confused, since there was no explanation provided as to the outstanding $412,000 in billings, and whether this same coding issue applied to any, some, or all of these claims. Meanwhile, claimants under DOL OWCP programs continued to receive medical equipment and services procured by Plaintiff with no suspension by Defendant of Plaintiff as a provider. [1]

18. The Defendant stated in the Exhibit "E" answer filed September 7, 2018, that OWCP/FECP was withholding payment until such time as Defendant could determine how much is legitimately reimbursable. Yet Defendant also stated in the same answer that the audit to determine the reimbursement had been completed. Defendant had over 4 months from the

---

[1] In this connection, the Trustee was advised by this notice of his appeal or reconsideration rights within thirty days of any adverse determination. . The Plaintiff did timely file request for reconsideration on behalf of the dismissed Trustee, since the deadline was October 31, 2018. Subsequent to the request for reconsideration, the DOL conducted a telephone conference with Plaintiff to make sure the reconsiderations were properly addressed. There was confirmation that the response to the reconsiderations would be made with no guaranteed date. As shown on Exhibit "M" this telephone conference took place on November 14, 2018. There has been no response from DOL since then, and DOL continues to pre-authorize DME equipment while making no payments to Plaintiff as shown on the annexed Exhibit "N".

May 15, 2018 suspension letter to conduct this audit. Defendant stated as of September 7, 2018 stating the audit was completed.  It was finally on October 4, 2018, that Defendant sent to the Trustee for the Plaintiff its explanation of denial of charges, with the great bulk of the denials (1,596 of 2,222 or 71%) based on the code 910 that deals with purchased items being treated as rentals. Same denial is attached as Exhibit "K".

19.     Plaintiff alleges that pursuant to OWCP/DFEC rules and regulations, 20 C.F.R. §10.411, if a claim meets the following criteria, it should be paid:

1. The patient needing Durable Medical Equipment (DME) is an employee of the DOL or that reimbursement is the responsibility of DOL
2. The patient has been examined by a licensed physician and the physician has made a determination that certain DME is needed to rehabilitate, cure or make the patient comfortable.
3. The physician has written a prescription that described the type of DME needed by the patient and the duration for which it was needed – either through rental or purchase.
4. Plaintiff received the prescription from the physician and delivered the DME to the patient.  In most cases, Plaintiff instructed the patient in the use of the DME, which often required an employee of Plaintiff to make a visit to the patient, either at their home or in the hospital.
5. The patient received the DME along with instructions or training in its use.

20.     Making a determination as to whether a claim should be paid or not should thus be a routine administrative action and should be determined in days and not months. Prior to his event, Defendant routinely examined invoices from Plaintiff and processed same within thirty (30) days of receipt.  Defendant claims in the Exhibit "E" answer filed in the bankruptcy case on September 7, 2018, that they were in the process of determining what submissions by Plaintiff meet the standards for reimbursement and that nothing has been frozen. Then in the same answer, Defendant claims the audit process has completed and only ten percent of claims meet the standards, with no then explanation of the defect, or cure, or communication that could establish appeal rights and timing.  Then finally in October, DOL

advises that 71% of the DME claims should have been submitted as purchase and not lease items, with no explanation as to why short term leases previously approve are no longer satisfactory. And then after motions for reconsideration are filed on October 31, 2018 as shown on the annexed Exhibit "L", and a conference call on November 14, 2018 as shown on Exhibit "M", there has been no response, no rejection, and no directions to allow Plaintiff to cure. Meanwhile patients of DOL continue to receive valuable services from the DOL program, with in many instances such services provided with pre-authorizations as shown on Exhibit "N". [2]This is disingenuous at best!

21.     To add insult to this injury, in some cases on certain items, as shown in Exhibit "G", Plaintiff was required to contact Defendant to have pre-certified approval (preauthorization) from Defendant prior to filling a prescription.  This is true for over $130,000 in billings.  The implicit assumption in such cases is that if Defendant pre-certifies a claim and Plaintiff delivers the DME, then payment should be forthcoming.  To not pay a pre-certified claim seems to be a fraudulent action on the part of Defendant.  In essence, Defendant is inducing Bioflex to deliver DME to the patient and then refusing to pay for it without providing cause, or recourse to administrative remedies. The Plaintiff continues to receive these pre-authorization approvals to the date of filing of this Complaint. (Exhibit "N" to the Declaration).

22.     Therefore, the most egregious act by the Defendant is the fact that for the last eight months since the investigators visited the Plaintiff's office in April of 2018, and the Plaintiff noticed Defendant of suspension pending examination on May 15, 2018, the

---

[2] In fairness, the pre-authorization letters do advise that they are not "guarantees".  However, this pattern of pre-authorization of over $131,000 of the total $619,580.61  billings since April 2018 with no actions to answer the motions for reconsideration filed in November 2018 is a prima facie violation of basic due process.

Defendant has allowed Plaintiff to provide DME without any objection whatsoever. Plaintiff paid for the DME and paid employees to service patients at considerable expense. Defendant has not paid Plaintiff for these services to patients under their program. Plaintiff will not speculate as to whether it was the intent of Defendant to accept these transactions with no intention of paying for them. However, from these facts it is clear Defendant has all but ruined a small business by failing to provide guidance where guidance was needed and failing to pay for services rendered in good faith.

23. Plaintiff has repeatedly requested such guidance from OWCP/ DFEC. Rather than explanation, Defendant has responded with stony silence while continuing to pre-authorize services it must know it is not paying for. No ready explanation exist as to why 71% of the claims are rejected because they should have been purchased rather than leased. This after DOL authorized the lease, and other governmental units, such as Texas Dept. of Health, routinely grant leasing for the equipment involved, such as water circulating pumps and paraffin wax baths. The balance of the denials are primarily based on "duplications", when no proof is offered; and provider "not enrolled". Yet this "not enrolled" provider is denied as an enrolled provider for 71% of the claims submitted as documented in Exhibit "K".

24. In exasperation, Plaintiff secured services of a third-party billing company to assist it with compliance. All billings submitted since October 18, 2018 have been reviewed and approved by this third party as shown on the annexed Exhibit "H". Notwithstanding, Defendant continues to refuse payment as shown on Exhibit "K".

25. The above facts demonstrate that the Secretary, as director of OWCP/FECP, should be ordered to show cause before this Court why he should not be required to honor an immediate turnover order of funds for services rendered by the Plaintiff it admits that it is

withholding in pleadings filed on this dispute, and that it cannot demonstrate adequate cause for its action of withholding under its own administrative rules, annexed hereto as Exhibit "I".

26.     To be sure, a view of Defendant's web site as documented in Exhibit "J" advises that Defendant, as of October 4, 2018, finally began denying claims of Plaintiff based ostensibly on a 910 "RR" coding error for over 72% of all of the claims. Plaintiff then timely filed motions for reconsideration on October 31, 2018, in the form of the example in Exhibit "L". DOL has failed to respond one way or the other to the reconsideration, continuing the pattern of denial of due process by its prior actions.

## IV. ARGUMENT AND AUTHORITIES

### SUMMARY

27.     Debtor asserts it has submitted billings in an amount well over $619,000 for providing durable medical equipment prescribed by licensed medical professionals for patients who are government employees under Defendant's OWCP/FECP programs.

28.     Defendant contends in Exhibit "K" 72% of the billings are being denied because they were improperly coded for rental instead of purchase. Over $130,000 of these rentals were pre-approved. When reconsideration and/or guidance is requested, the DOL simply ignores the request with no response whatsoever.

29.     Yet, Defendant (i) refunded only the amounts that had been improperly seized, and failed to turn over the 10% of billings it contended had been approved in its answer filed with the Bankruptcy Court on September 5, 2018; (ii) failed to communicate the decision to Plaintiff that these billings were denied other than in the above pleading, and only as of October 4, 2018, did the website maintained by the Defendant provide any notice of adverse determination. Even then, the "910" "RR" error code used for over 71% of the denials, that the coding was for rental in lieu of purchase, was never formally communicated to Plaintiff,

who can only intuit the error code based on the written communication sent to the Trustee by Exhibit F and "K" to the Declaration. Further, after the initial suspension in May 2018, Plaintiff was neither notified of the basis for denial of over 71% of the claims stated in the Exhibit "E" pleading of Defendant filed in the bankruptcy case, nor given, as the Trustee was provided in Exhibit "F" and "K" written communication of this decision and its appeal rights from same under applicable rules and regulations. Absolutely no information has been provided with respect to additional information required to cure defects, notwithstanding verbal assurances that the motion to reconsider was the appropriate action.   Rather, the Secretary appears hell bent on denial of fundamental due process to the Plaintiff by delay, obfuscation, and other extreme means to work harm on Plaintiff and deny reimbursement for the DME serviced supplied.

        30.   Plaintiff agrees with Defendant's position in the bankruptcy court, that central to the FECA statutory scheme is the role of the Secretary of Labor. Congress has conferred on the Secretary of Labor absolute authority to enforce and administer FECA and to decide all questions arising under FECA. 5 U.S.C. § 8145. The Secretary is vested with broad policy-making authority to "prescribe rules and regulations necessary for the administration and enforcement" of FECA. 5 U.S.C. § 8149; *see Morton v. Ruiz*, 415 U.S. 199, 231 (1974) ("The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."). FECA further provides in pertinent part that the Secretary of Labor has the discretion to furnish only those services, appliances, and supplies prescribed or recommended by a qualified physician that he/she considers likely to cure, give relief, reduce the degree or the period of disability, or aid in lessening the amount of the monthly compensation. 5 U.S.C. § 8103(a). Given this broad power, the Secretary

"has the 'sole discretionary power' to determine in the first instance" whether to make an award of FECA benefits in a particular case. *See Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981) (*quoting Buckley v. Valeo*, 424 U.S. 1, 112 n. 153 (1976)). The Secretary in turn has delegated the authority provided by § 8145 and § 8149 to the Director of the Office of Workers' Compensation Programs (the OWCP), who is responsible for the administration and implementation of FECA. 20 C.F.R. § 10.2.

31.     However, that is where Plaintiff and Defendant's agreement ends. Nothing in the statutory scheme above described contemplates the Constitutional due process nightmare that has been imposed on Plaintiff by Defendant's conduct in this case.

32.     Plaintiff agrees with Defendant that a providers' submissions to OWCP which are not approved for payment must go through an administrative process to challenge the non- payment of the submission. 20 C.F.R §§ 10.811-10.812. Thus, any action of the Secretary of Labor and/or his or her designee in allowing or denying payment pursuant to FECA is final and judicial review concerning all questions of law and/or fact is explicitly barred. *See* 5 U.S.C. § 8128(b). Section 8128 (b) provides in pertinent part:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is ---
>
> > (1)  final and conclusive for all purposes and with respect to all questions of law and fact; and
> >
> > (2)  not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b); *see also Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1911) ("FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary's determination of FECA coverage"); *Lockheed Aircraft Corp.*, 460 U.S. at 194.

32. Plaintiff also agrees that furthermore, the Supreme Court has singled out section 8128(b) as a model preclusion-of-review statute; noting that Congress uses such "unambiguous and comprehensive language" as found in the statute "when [it] intends to bar judicial review altogether." *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 779-80 (1985).

33. Defendant concedes, however, that federal courts, have recognized two exceptions wherein they nonetheless may exercise jurisdiction over a final decision of the Secretary under FECA: (1) a constitutional claim and (2) a claim that the Secretary violated a clear statutory mandate or prohibition. *See Taylor v. Potter*, 124 F. App'x 293, 2005 WL 746617, at *1 (5th Cir. 2005) (per curiam) (*Citing Woodruff v. United States,* 954 F.2d 634, 639 (11th Cir. 1992)).

34. With respect to the first exception, the Fifth Circuit has recognized that in very limited situations "[a] court may review an OWCP decision if there are 'substantial constitutional claims,' such as those arising from a due process violation." *Beemer v. Holder*, 495 F. App'x 396, 399 (5th Cir. 2012) (*citing Garner v. U. S. Dep't of Labor*, 221 F.3d 822, 824-25 (5th Cir. 2000).

35. Review of the facts here clearly show fundamental violation of Plaintiff's due process rights: (i) Plaintiff was first subjected to threatened criminal investigation that wound up baseless; (ii) Plaintiff then had his bank accounts seized with no explanation; (iii)Plaintiff then was advised that payment for services provided were to be suspended during audit examination which the Secretary described to be completed "as quickly as possible"; (iv) Plaintiff then was forced into bankruptcy by actions of the Secretary in being dilatory with the investigation; (v) Plaintiff then had his claims for reimbursement continued to be denied under an audit investigation that had by the date of the answer to a motion to show cause had

been "completed"; (vi) Plaintiff then had his trustee in bankruptcy be provided with explanation and appeal rights for only $5000 of the disputed $417,000 in claims a month after the answer that explained to the bankruptcy court the investigation had been completed claims were denied but additional information would be regulated; (vii) Plaintiff then waited in vain for the promised 10% of claims that had been allowed under the answer, only to receive the equivalent of funds improperly seized without cause in the first place; (viii) then a month after the letter to the trustee and the answer, then to have only indirect notification thru a web site portal and a letter to the Trustee that claims had been denied on blanket basis for primarily alleged use of an improper rental code with no request for additional information; and (ix) then Plaintiff then took timely action against adverse action by request for reconsideration under applicable rules promulgated by OWCP/FWEP, which have simply been ignored.[3]

36.     Close review of the facts and holdings of *Beemer v. Holder, and Garner v. U.S. Dep't of Labor, Supra,* clearly demonstrate the applicability of the holdings there to provide exception for judicial review of the acts of the Secretary.

37.     First, both cases hold for the principle that where there is a strong constitutional challenge, that exhaustion of administrative remedies is not required.

> A failure to exhaust administrative remedies may be excused when the claimant advances a constitutional challenge unsuitable for determination in an administrative proceeding, or when the unexhausted remedy is plainly inadequate.[7] When an exception is applicable, a federal court has the discretion to excuse the exhaustion

---

[3] Out of abundance of caution, Plaintiff has filed timely request for reconsideration as provided under 20 CFR §10.411, but legitimately fears based on the unconstitutional actions of the Secretary, that he will be subjected to continued delay, harassment, and violation of due process by administrative procedures as proved from past conduct. Especially, since Plaintiff has been provided inadequate information on the basis of denial. For example, some rental equipment had been pre-authorized for rental—yet the denial code states it had to be purchased. And if purchased, at what costs?

requirement.[8] We conclude that both of these exceptions are present herein. Garner, Supra. (footnotes omitted).

38.     Here, Plaintiff challenges the due process provided him of compliance by the Defendant with the Defendant's own rules and regulations to provide adverse determinations, and options to a supplier. To force the party deprived of basis due process considerations to the administrative process would require the agency to be its own judge and jury of its constitutional comportment. This is both to require Plaintiff to adjudicate the issue in an administrative proceeding that is unsuitable, or with a remedy that is plainly inadequate. This exercise in futility is plainly refuted by *Garner, Supra.*

39.     There is no due process violation when the government deprives a property right unless it fails to provide notice and the opportunity to be heard. *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In *Mullane,* the Supreme Court outlined the contours of due process thusly:

> ". . . . An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357; Grannis v. Ordean, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363; Priest v. Board of Trustees of Town of Las Vegas, 232 U.S. 604, 34 S.Ct. 443, 58 L.Ed. 751; Roller v. Holly, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520. The notice must be of such nature as reasonably to convey the required information, Grannis v. Ordean, supra, and it must afford a reasonable time for those interested to make their appearance, Roller v. Holly, supra, and cf. Goodrich v. Ferris, 214 U.S. 71, 29 S.Ct. 580, 53 L.Ed. 914. But if with due regard for the practicalities and peculiarities of the case these conditions *315 are reasonably met the constitutional requirements are satisfied. 'The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' American Land Co. v. Zeiss, 219 U.S. 47, 67, 31 S.Ct. 200, 207, 55 L.Ed. 82, and see Blinn v. Nelson, 222 U.S. 1, 7, 32 S.Ct. 1, 2, 56 L.Ed. 65, Ann.Cas.1913B, 555.
>
> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee

might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, with ***658* Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes. *Mulane, Supra*.

40. Here, Plaintiff was advised only by publication in a web site portal of denial of benefits that had been arguably improperly frozen for over six months, while Plaintiff dutifully continued to provide services to Defendant's claimants. This fundamental violation of due process cannot be justified because of some blanket statutory proscription of judicial review of administrative action under the above authorities.

### V.
### FIRST CAUSE OF ACTION-DECLARATORY JUDGMENT THAT THE DEFENDANTS HAVE WRONGFULLY WITHHELD THE FUNDS OWING TO PLAINTIFF UNDER OWCP/DFEC PROGRAMS

41. Plaintiff reincorporates the allegations in Paragraphs 1-40, as if set forth fully herein. As a result, a bona fide dispute has arisen as to whether the Defendant, DOL OWCP/DFEC should agree, that due to their abysmal failure to provide guidance to suppliers of cause for delay or holdback of payments, that the DOL is required to reimburse Plaintiff for DME supplies and equipment provided under said programs.

42. Plaintiff respectfully requests that this Court grant the following specific Declaratory relief:

   a. Declare that the Defendants are compelled to comply with the regulations of DOL OWCP/DFEC with respect to timely reimbursement to suppliers of DME supplies and equipment to qualified claimants;

   b. Declare that the Defendants are required to provide a prompt response to the request for reconsideration adverse determination with transparency with respect to any bona fide claims that Plaintiff has failed to meet rules and regulations with respect to billing for reimbursement;

    c.    Declare that Defendants under their own regulatory scheme are required to provide a plan for correction as to any such bona fide claim reimbursement dispute;

    d.    Grant such other and further relief as the Court deems just and appropriate.

## VI.
## SECOND CAUSE OF ACTION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

43. Plaintiff reincorporates the allegations in Paragraphs 1-20, as if set forth fully herein.

44. The actions of the Defendant in withholding payments without cause, justification, or explanation has caused Plaintiff immediate and irreparable harm. At minimum, due process would require a timely adverse decision, combined with explanation of denial of services rendered on behalf of claimants of OWCP/FECP programs receiving the direct benefit of those services at the expense of Plaintiff. This adverse decisions with detail as to explanation would then allow pursuit of administrative appeals remedy to cure alleged defects that would be available to Plaintiff.

45. The pleadings filed by Defendant suggest it takes the position that it has the right to investigate as long as it desires, take as much time as it wants to reach a decision, provide no notice of its adverse decision until months after it is made, make no explanation, and provide no opportunity for Plaintiff to cure, notwithstanding its protest to Plaintiff that its investigation commenced in May 2018 would be done as quickly and efficiently as possible. Given the small number of claims involved here, contrasted with the total claims processed by Defendant, there is simply no adequate explanation for the delay and stubborn refusal of Defendant to provide response to request for reconsideration of adverse determination, cause for same, and appropriate remedy for reconsideration and/or appeal from reconsideration.

46. If the Court determines that the Defendant defaulted in refusing to timely explain cause and provide remedy and will likely continue its obstinate refusal to reimburse Plaintiff by further delay stratagems, the threat to Plaintiff is immediate and irreparable. Rather than receive reimbursement, Plaintiff is thrust in the position of making interest free loans to the Defendant and its covered employees while the Defendant leisurely takes its time to evaluate the services rendered by Plaintiff and accepted by Defendant on behalf of its claimants and decide to pay for same or not.

47. No harm will result to Defendants by issuance of a temporary restraining order, and temporary injunction pending a determination of the issues raised in this Complaint. At minimum, Defendant should pay the amount of pre-approved claims as shown on Exhibit "G".

48. Plaintiff believes no security is required but is ready to post such security as the Court may deem proper under Fed. R. Civ. Proc. 65(c) prior to the issuance of the temporary restraining order and temporary injunction prayed for herein.

49. The facts and applicable law show a strong probability that Plaintiff will prevail on the merits herein. Defendant has no basis to refuse to reimburse Defendant, especially on invoices that were pre-approved by Plaintiff.

50. Plaintiff has no adequate remedy at law.

51. Plaintiff therefore requests that the Court enter a temporary restraining order, temporary injunction, and permanent injunction, enjoining Defendants, their successors, agents, servants, representatives, employees and all persons acting in concert with them from taking any action to withhold reimbursements to Plaintiffs for invoices for DME services and supplies provided to claimants under OWCP/FECP programs under his authority and control.

52.     Further, that Plaintiff be awarded attorney's fees and costs; and that Plaintiff have such other and further relief to which it may show itself to be entitled.

WHEREFORE, ALL PREMISES, Plaintiff prays for the relief so requested for both declaratory and injunctive relief.

Dated: December 28, 2018                               Respectfully submitted,

By: /s/ KEVIN S. WILEY, SR.
SBOT #21470700
THE WILEY LAW GROUP, PLLC
325 N. ST. PAUL, STE. 2750
DALLAS, TEXAS 75201
(469) 484-5016(O)
(469) 484-5004 (FAX)
(214) 537-9572 (M)